UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHARLES WHITE,

    Plaintiff,

  v.

SADARSHAN SUNEJA, M.D., LINDA FOUTCH, R.N., LINDA GRAY, R.N. JODY HORMANN, R.N., CHARLOTTE MIGET, R.N., FE FUENTES, M.D., MIKE PUISIS, M.D., SHIRLEY ZIEBOLD, M.D., NURSE MCCLURE, R.N., LIEUTENANT ZEIGLER and CORRECTIONAL OFFICER MORTON,

    Defendants.

Case No. 10-cv-332-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 142) of Magistrate Judge Philip M. Frazier recommending that the Court grant the motions for summary judgment filed by the remaining defendants (Docs. 103, 105, 115, 119 & 120). Plaintiff Charles White has objected to the Report (Doc. 143), and some of the defendants have responded to that objection (Doc. 144).

This case arose while inmate White was on a hunger strike in 2008. For a period ending November 3, 2008, prison staff (including defendants Foutch, Gray, Miget, Garrett, Fuentes, Fahim, Puisis and Ziebold) inserted and removed the feeding tube on a daily basis pursuant to a doctor's order.

On December 8, 2008, defendant Dr. Suneja ordered forcible administration of antipsychotic drugs against White's will. Defendants Foutch, Zeigler and Morton restrained White and administered the drugs. The following week, White began ingesting liquid food by mouth, and the drugs were not administered again.

White claims that the daily insertion and removal of the feeding tube (Count 1) and the administration of antipsychotic drugs (Count 2) were done for no legitimate reason, were instead designed to force him to end his hunger strike, and therefore violated the Eighth Amendment's ban on cruel and unusual punishment.

The Report found Gray, Miget, Garrett, Fuentes, Fahim, Puisis, Ziebold and Morton are entitled to

summary judgment based on the statute of limitations and that Foutch, Suneja and Zeigler are entitled to summary judgment because there is no evidence they had the requisite culpable state of mind.   The Report

**I.      Report and Recommendation Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3).   The Court must review *de novo* the portions of the report to which objections are made.   *Id.*   "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."   *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.     Analysis**

A.      Statute of Limitations

With respect to the statute of limitations issue, no party disputes that the statute of limitations issue in this case is governed by the Illinois two-year personal injury statute of limitations, 735 ILCS 5/13-202, and Illinois tolling rules.   *Wallace v. Kato*, 549 U.S. 384, 387, 394 (2007).   One of those Illinois rules allows equitable tolling of the statute of limitations if "the plaintiff has been prevented from asserting his or her rights in some extraordinary way."   *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000).

Magistrate Judge Frazier found that Gray, Miget, Garrett, Fuentes, Fahim, Puisis, Ziebold and Morton, were entitled to summary judgment because White first named them in an amended pleading more than two years after their conduct about which White complains, and the limitations period was tolled for an insufficient amount of time to bring those claims within the statute of limitations.   Specifically, Magistrate Judge Frazier found that the Illinois Department of Corrections' ("IDOC") 11-week delay in producing discovery documents (White's clinical and medical records) that led to the identities of these defendants was not an extraordinary event that prevented White from identifying the defendants earlier and therefore did not toll the running of the limitations period.   He noted that under Illinois prison rules, *see, e.g.,* 20 Ill. Admin. Code 107.310, 107.330, White could have inspected his records earlier, so the delay did not prevent him from accessing the information in those records necessary to identify the defendants.

White objects, arguing that it is reasonable to infer that since IDOC delayed in producing records pursuant to subpoena it would not have honored a request from him to inspect his own records. He further argues that the records produced were disorganized and often illegible, so he would not have been able to decipher them to identify the defendants; the implication is that counsel was necessary for that task.

White's assertion that IDOC would not have allowed him to inspect records he had a right under the Illinois Administrative Code to inspect is not a reasonable inference from the litigation history in this case. Furthermore, the notion that White could not have deciphered his records to identify the defendants earlier without counsel's assistance is speculation. In the Report, Magistrate Judge Frazier drew all reasonable inferences in White's favor and came to the correct conclusion that the statute of limitations had expired before White named Gray, Miget, Garrett, Fuentes, Fahim, Puisis, Ziebold and Morton in this case. They are therefore entitled to summary judgment.

The Court further notes that even had the limitations period been equitably tolled for the period IDOC was delinquent in its document production – approximately 11 weeks – the limitations period would still have expired before the additional defendants were added to the case.

  B. Deliberate Indifference

No party disputes that, in order to prevail on an Eighth Amendment claim, White must prove, among other things, that the defendants had a sufficiently culpable state of mind, that is, that he was at a minimum deliberately indifferent. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference can arise where a treatment decision was a "substantial departure from accepted professional judgment, practice, or standards," *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996), or was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment," *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006).

  1. Count 1

With respect to Count 1 regarding daily changes of White's feeding tube, Magistrate Judge Frazier

3

found there was no evidence from which a reasonable jury could conclude that defendant Foutch, a nurse who participated in the feeding tube changes, was deliberately indifferent to White's health. He found that Foutch's decision to follow the doctor's order for daily feeding tube changes even though she knew the daily changes caused White distress was not so far afield of accepted professional standards that a reasonable jury could find it was not be based on medical judgment. He noted there was evidence from Dr. Fuentes, a prison doctor, that both leaving a feeding tube in for a long time and changing a feeding tube frequently can both pose risks to an inmate, that IDOC has inmates on feeding tubes occasionally, and that it is a common state prison practice to change feeding tubes daily for inmates who are not disabled and able to dislodge their tubes.

White objects to Magistrate Judge Frazier's consideration and interpretation of Dr. Fuentes' testimony, specifically, the frequency of feeding tube changes occurring at the prison, the general prison policy regarding feeding tube changes, and the current healthcare administrator's views on feeding tube changes. Without this offending testimony, White argues, the evidence shows his feeding tube was changed five times more often than is common practice.

The Court has reviewed Dr. Fuentes' entire deposition and finds it establishes that daily feeding tube changes are common practice for inmates who are otherwise able to dislodge their own tubes. She is competent to testify as to the direction and policies she received from the health care administrator even if the paper she claims documents the policy is not producible because it is privileged and even if she has had to implement that policy infrequently. In light of Dr. Fuentes's testimony, no reasonable juror could find that Foutch's decision to follow a doctor's order to change White's feeding tube daily was such a departure from professional medical standards that it was not based on her medical judgment. Foutch is entitled to summary judgment on Count 1.

    2.    <u>Count 2</u>

With respect to Count 2 regarding forced administration of antipsychotic medication, Magistrate Judge Frazier found there was no evidence from which a reasonable jury could conclude that Dr. Suneja,

Foutch and Zeigler treated White without a medical need and for the purpose of making him abandon his hunger strike.  He noted that Dr. Suneja had diagnosed White with mental health problems and believed he was in danger from his lengthy hunger strike.  When other treatments either had not worked or had been refused by White, he conferred with colleagues and turned to forced antipsychotic medication.  Pursuant to Dr. Suneja's order, Foutch injected the drugs into White's hip while Zeigler restrained White.  A week later, Dr. Suneja observed White's mental health symptoms had lessened, so he decided to observe White without further medication.  At that time, White began to drink liquid nutrients.  Magistrate Judge Frazier concluded that, in light of White's diagnosis and prior failed treatments, no reasonable jury could find Dr. Suneja's decision to forcibly administer antipsychotic medication was not "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006).  Likewise, no reasonable jury could find that Foutch and Zeigler's decision to carry out Dr. Suneja's treatment orders was based on anything other than medical judgment.

White objects, arguing that Dr. Suneja's decision to stop treating White with antipsychotic medications because White had started drinking liquid nutrients leads to the inference that Dr. Suneja treated White with the drugs *because* he was not eating or drinking.  He challenges Dr. Suneja's testimony that treatment with antipsychotic medication was in response to an emergency and argues that the only change in his condition before and after the forced medication was the status of his hunger strike.

The Court agrees with Magistrate Judge Frazier that no reasonable jury could find Dr. Suneja was deliberately indifferent.  White disagrees with Dr. Suneja's assessment of his medical condition and appropriate treatment before the drugs were forcibly administered, but that is nothing more than a difference of opinion akin to negligence, not deliberate indifference.  The evidence shows Dr. Suneja thought White was having delusions that prison staff were trying to put things in his food and was refusing to eat because of paranoia.  Dr. Suneja consulted a team of doctors and determined that White had met all the criteria in IDOC policy for forced medication, including that he posed a serious harm to himself (from

5

the hunger strike and from the use of feeding tubes) *because of his mental illness*. After the drugs were administered, Dr. Suneja thought the drugs had improved White's delusions a bit because he had begun to drink nutritious liquids in prepackaged containers. In essence, Dr. Suneja viewed White's hunger strike as caused by his mental illness, so when the hunger strike improved, Dr. Suneja took that to mean White's mental state had improved a little bit as well. White has no evidence to the contrary regarding Dr. Suneja's state of mind. In light of these facts, no reasonable jury could find that Dr. Suneja's decision to stop ordering the drugs when White started drinking liquid nutrition meant that he had originally ordered them for a non-medical reason.

White also objects to Magistrate Judge Frazier's finding that no reasonable jury could find Foutch and Zeigler were deliberately indifferent to White's needs. He points to the fact that, when given no specific instruction about where to inject White, they injected him in his buttocks rather than his arm, knowing White did not trust prison staff.

White's argument has no merit. Foutch and Zeigler were carrying out doctor's orders that were not so far afield of accepted professional standards such that a jury could infer their actions were not based medical judgment.

C. Due Process

Magistrate Judge Frazier found that White's amended complaint – drafted by White's appointed attorney – did not contain a due process challenge to the forced administration of antipsychotic medication, so he declined to address that theory. Count 2 in White's amended complaint clearly pleads an Eighth Amendment claim for forced medication, but White argues that his reference to "Constitutional right*s*," as opposed to his "Constitutional right," within his statement of Count 2 shows that the claim includes a due process violation.

The Court agrees with Magistrate Judge Frazier that the amended complaint did not plead a due process claim sufficiently to put the defendant on notice of that claim. Although White's initial pleading contained a due process claim, the amended complaint did not mention due process or the Fourteenth

Amendment other than to use it to incorporate Eighth Amendment standards to state officials. Furthermore, it did not assert essential facts relevant to a due process claim like, for example, the absence of an impartial panel to review the decision to forcibly medicate White or the absence of an opportunity for White to present his side of the story to that panel. *See Washington v. Harper*, 494 U.S. 210, 233 (1990). White simply failed to plead sufficient facts to plausibly suggest a right to relief for a due process violation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III. Conclusion

For the foregoing reasons, the Court hereby:

- **ADOPTS** the Report in its entirety (Doc. 142);

- **GRANTS** the defendants' motions for summary judgment (Docs. 103, 105, 115, 119 & 120); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: March 19, 2013**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**